ORIGINAL

# In the United States Court of Federal Claims

No. 15-28C

(Filed July 5, 2016)

FILED

JUL - 5 2016

U.S. COURT OF
FEDERAL CLAIMS

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                              *
                                              *
STEVEN J. STANWYCK,                           *
                                              *
                Plaintiff,                    *
         v.                                   *
                                              *
THE UNITED STATES,                            *
                                              *
                Defendant.                    *
                                              *
* * * * * * * * * * * * * * * * * * * * * * * *
```

Motion to dismiss, RCFC 12(b)(1);
bankruptcy trustee bonds, 11 U.S.C.
§ 322; no contract based on statutes
and regulations; no jurisdiction over
criminal matters; *Joshua v. United
States*; RICO, 18 U.S.C. § 1961 *et seq.*;
no money-mandating laws identified.

*Steven J. Stanwyck*, Santa Monica, Cal., *pro se*.

*Geoffrey M. Long*, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Franklin E. White, Jr.*, Assistant Director, all of Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

WOLSKI, Judge.

Pending before the Court is defendant's motion to dismiss this case. For the reasons set forth below, the Court finds that it lacks jurisdiction over plaintiff's claims. Defendant's motion to dismiss the case is **GRANTED**.

## I. BACKGROUND

Plaintiff Steven J. Stanwyck[1] was a debtor in three Chapter 7 bankruptcy proceedings. Comp. at 2 (citing *In re Stanwyck*, 2:92-bk-22475-SB (Bankr. C.D. Cal. 2002); *In re Stanwyck*, 2:02-bk-25398-SB (Bankr. C.D. Cal. 2008); *In re*

---

[1] Although Mr. Stanwyck is proceeding in this case *pro se*, he was a member of the California bar until his disbarment on February 11, 2012. *See Attorney Profile, Steven Jay Stanwyck - #48728*, The State Bar of California, http://members.calbar.ca.gov/fal/Member/Detail/48728 (last visited July 5, 2016).

*Stanwyck*, 2:07-bk-19183-PC (Bankr. C.D. Cal. 2013)). Plaintiff's complaint[2] alleges
that the Clerk of the Court of the United States Bankruptcy Court for the Central
District of California improperly closed his prior bankruptcy proceedings. Compl. at
2. The closures were improper, plaintiff contends, because the bankruptcy trustees
were allegedly acting without proper trustee bonds and, thus, could not lawfully
discharge the bankruptcy actions. *Id.* Upon a close review of plaintiff's complaint
and its attachment, plaintiff's claim seems to be that all bankruptcy judges and
trustees have, since 1992, failed to satisfy the bonding requirements under 11
U.S.C. § 322(a) and have thus improperly received compensation for their services.
Compl. Ex. 1 at 2. Based on this, Mr. Stanwyck seeks at least $200,000,000 in
damages and any other equitable relief deemed appropriate by this Court. *See*
Compl. at 6; Pl.'s Resp. to Def.'s Mot. to Dismiss (Pl.'s Resp.) at 7.

In the complaint, plaintiff bases our court's purported jurisdiction to hear the
matter on the Fifth and Fourteenth Amendments to the United States Constitution;
the Tucker Act (28 U.S.C. § 1491); unspecified contracts between plaintiff and the
United States; various provisions under Chapters 3 and 7 of Title 11 of the U.S.
Code; 28 U.S.C. §§ 159, 583, 586, and 1930; the Racketeer Influenced and Corrupt
Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*; and various Federal Rules of
Bankruptcy Procedure. Compl. at 3–4. Specifically, plaintiff alleges that the
judicial Administrative Office of the United States Courts has conspired with the
U.S. Department of Justice's Executive Office for U.S. Trustees (EOUST) to harm
plaintiff. Compl. at 5. This allegedly constituted a RICO conspiracy that also
involved violations of 18 U.S.C. §§ 1341, 1503, 152, 153, and 157(3). Compl. at 5.

The government moves to dismiss this case under Rule 12(b)(1) of the Rules
of the United States Court of Federal Claims (RCFC) for lack of subject-matter
jurisdiction. Def.'s Mot. at 1. The government argues first, that this court lacks
jurisdiction over plaintiff's criminal and civil RICO claims. *Id.* at 3–4. Second, the
government contends that this court lacks jurisdiction over cases arising under
bankruptcy laws and cannot review the decisions of a bankruptcy court or any other
court. *Id.* at 5. Third, the government argues that this court lacks jurisdiction over
plaintiff's claims under the Fifth and Fourteenth Amendments. *Id.* at 5–7.
Defendant also claims that plaintiff has not identified how the provisions in title 28
create jurisdiction. Id. at 5–6. Fifth, the government states that there exists no
evidence of "contracts between Stanwyck and the United States." *Id.* at 5–7.

---

[2] Plaintiff purports to sue in his name and in the name of the United States,
pursuant to Federal Rule of Bankruptcy Procedure (FRBP) 2010(b). While FRBP
2010(b) allows a proceeding to be brought "by any party in interest in the name of
the United States," such a proceeding on bond is only permitted within bankruptcy
and district courts. *See* 28 U.S.C. § 1334(a); *Capelouto v. United States*, 99 Fed. Cl.
682, 691 (2011). Accordingly, the plaintiff in this matter is just Mr. Stanwyck and
not "Steven Jay Stanwyck in the name of the United States."

Alternatively, the government seeks to have this case dismissed under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted. Def.'s Mot. at 7–8. The government argues that plaintiff has failed to provide facts supporting his allegations to elevate his claims above the speculative level. *Id.* at 8.

Plaintiff, after a series of extensions due to health issues, responded and asserts that under 28 U.S.C. §§ 581-589a, he had an express or implied contract with the Executive Office for U.S. Trustees. Pl.'s Resp. at 3. Plaintiff cites several statutes to evidence the contractual obligations the EOUST allegedly owes him. *Id.* at 3–4. Mister Stanwyck clarifies that he is not bringing a claim under Title 11.[3] *Id.* at 5. Plaintiff argues that the court has jurisdiction to hear his civil RICO claims, but seemingly concedes that his constitutional claims are beyond our jurisdiction. *Id.* at 6. Plaintiff also requests a variety of additional equitable relief, moves for leave to amend his complaint, requests that a conference be held by telephone, and, alternatively, moves for the transfer of his case to a U.S. district court. *Id.* at 7–8.[4]

The government replied and argues that no contract existed between the government and plaintiff and that while plaintiff listed several statutes, neither his complaint nor his response articulated how those statutes created a duty of the government. Def.'s Reply at 1–3. Defendant also argues that the court does not have jurisdiction over any civil RICO claims plaintiff seeks to bring. *Id.* at 4–5. The government also opposes the variety of other relief plaintiff sought. *Id.* at 5–7.

## II. DISCUSSION

### A. Legal Standards

Under RCFC 12(b)(1), this court must dismiss claims that do not fall within its subject-matter jurisdiction. When considering a motion to dismiss a case for lack of subject-matter jurisdiction, courts will accept as true all factual allegations the non-movant made and draw all reasonable inferences in the light most favorable to that party. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Pixton v. B&B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed. Cir. 2002) (requiring that on a motion to dismiss for lack of subject-matter jurisdiction this court views "the alleged facts in the complaint as true, and if the facts reveal any reasonable basis upon which the non-

---

[3] As a consequence, the Court need not address defendant's arguments regarding our jurisdiction over bankruptcy proceedings.

[4] The Court has determined that no hearing is necessary in this matter, and thus Mr. Stanwyck's request that a hearing be held by telephone is **DENIED**.

movant may prevail, dismissal is inappropriate"); *CBY Design Builders v. United States*, 105 Fed. Cl. 303, 325 (2012).

While a *pro se* plaintiff's filings are to be liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), this lenient standard cannot save claims which are outside this court's jurisdiction from being dismissed. *See, e.g., Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995). The party invoking a court's jurisdiction bears the burden of establishing it and must ultimately do so by a preponderance of the evidence. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

## B. Analysis

Even under a most liberal interpretation of the complaint, it fails to embrace matters falling under this court's subject-matter jurisdiction. It appears that plaintiff misconstrues the jurisdiction Congress has given our court. Our general jurisdictional statute, 28 U.S.C. § 1491(a)(1), requires the presence of either a properly-pled contract with the federal government or the identification of a money-mandating law which was allegedly violated by the federal government.[5] *See United States v.* Mitchell, 463 U.S. 206, 216–17 (1983). Neither predicate for our jurisdiction has been properly alleged by Mr. Stanwyck.

### 1. The Court Lacks Subject-Matter Jurisdiction over Plaintiff's Purported Contract Claims

Plaintiff is alleging that the trustees in his three closed Chapter 7 bankruptcies never filed the bond required under 11 U.S.C. § 322(b). Compl. at 2. Because the trustees were not bonded, Mr. Stanwyck contends they had neither power nor standing to oversee and close his bankruptcies. *Id.* As clarified in plaintiff's response, Mr. Stanwyck is alleging that he is suing based on a contract with the U.S. Department of Justice.[6] Pl.'s Resp. at 5. Plaintiff identifies a variety

---

[5] Plaintiff's complaint alleges improper action by "unnamed, non-government, co-conspirators, such as the fraudulently claiming power and standing 'chapter 7' trustees." Compl. at 5. Because the subject-matter jurisdiction of this court is limited to suits against the United States, claims based upon wrongdoing by private actors must be dismissed pursuant to RCFC 12(b)(1). *Capelouto v. United States*, 99 Fed. Cl. 682, 688 (2011) (citing *United States v. Sherwood*, 312 U.S. 584, 588 (1941) (noting our predecessor court was "without jurisdiction of any suit brought against private parties")). Any claim directed against individuals is dismissed.

[6] The government correctly notes in its reply that plaintiff's complaint did not clearly indicate such a claim. Def.'s Reply at 1–2.

of statutes, regulations, provisions, and handbooks that allegedly created duties that the government, including the EOUST, owed to him, which it did not fulfill. *Id.* at 3.[7]

Plaintiff has not identified an express written contract he has entered into with the United States government. As a consequence, in order to properly base a cause of action on a contract with the United States government, plaintiff must allege (1) the mutual intent to contract; (2) an exchange of consideration; (3) an unambiguous offer and acceptance; and (4) the actual authority possessed by the government representative who made the contract. *See Lewis v. United States*, 70 F.3d 597, 600 (Fed. Cir. 1995). When a plaintiff fails to substantially allege the existence of an implied-in-fact contract, our court lacks subject-matter jurisdiction over the case. *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1344 (Fed. Cir. 2008). Insubstantial allegations concerning the elements of a contract do not establish a contract claim within our jurisdiction. *See Twp. of Saddle Brook v. United States*, 104 Fed. Cl. 101, 110 (2012) (citing *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005)). Plaintiff has failed to substantially allege any of the four elements of an implied-in-fact contract with the government.

Mister Stanwyck's citations to various statutes and regulations are unavailing. The government is correct that there is a presumption that "a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." *See Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 465–66 (1985) (quoting *Dodge v. Board of Education*, 302 U.S. 74, 79 (1937)). Evaluating whether a plaintiff has overcome this presumption begins with examining the language of the statute. *Id.* Absent an adequate expression of actual intent, a court "will not lightly construe that which is undoubtedly a scheme of public regulation to be, in addition, a private contract to which the state is a party." *Id.* at 466–67. "The rule . . . that jurisdiction under the Tucker Act cannot be premised on the asserted violation of regulations that specifically do not authorize awards of money damages --- cannot be avoided simply by characterizing the applicable statute or regulation as creating an implied contract." *Baker v. United States*, 50 Fed. Cl. 483, 489 (2001).

Plaintiff has not identified any language contained in any of the statutes, regulations, or other materials that he cites that even suggests that a contract is formed between the government and debtors in bankruptcy. Nor does a review of the statutes listed by Mr. Stanwyck, *see* Pl.'s Resp. at 3, reveal any language that supports the creation of such a contract. Plaintiff's theory seems to be that the

---

[7] These include 28 U.S.C. §§ 583, 586, 589a, 589b, 1737, and 1930. Pl.'s Resp. at 3. The Court has reviewed these statutes and finds that none of them are money-mandating.

regulation of the conduct of bankruptcy trustees amounts to a contractual duty promised to debtors in return for the payment of bankruptcy fees. But there is no textual support for such a notion, as the cited statutes and regulations do not make reference to any contractual intentions and do not mandate payment of money for any purported violations.[8]  Plaintiff has failed to identify a substantial basis to support any element of an implied-in-fact contract, much less all of them. Thus, the complaint does not contain a breach of contract claim against the United States falling within our subject-matter jurisdiction.

### 2. The Court Lacks Subject-Matter Jurisdiction over Civil RICO Claims or Criminal Charges

Plaintiff alleges that the United States and Chapter 7 trustees are jointly liable under the Racketeer Influenced and Corrupt Organizations Act (RICO), see Compl. at 5 (citing 18 U.S.C. §§ 1961(1)(C), 1961(4), 1961(5), and 1962(d)), and other provisions of the criminal code, id. (citing 18 U.S.C. §§ 152, 153, 157(3), 1341, and 1503)), for harming Mr. Stanwyck in his business affairs. The government moved to dismiss this claim as our court cannot "adjudicate any claims whatsoever under the federal criminal code." Def.'s Mot. at 4 (citing Meschkow v. United States, 109 Fed. Cl. 637, 646 (2013) (citing Joshua v. United States, 17 F.3d 378, 379 (Fed. Cir. 1994))).

In his response, plaintiff asserts that our court has jurisdiction over his civil RICO claims and argues that Joshua v. United States, a Federal Circuit decision relied upon by our court in the opinion cited by the government, lacks any supporting authority for its proposition that our court cannot hear criminal matters. Pl.'s Resp. at 6. To be sure, the only discussion about criminal code matters in Joshua is contained in a quotation from the order issued by our court, see 17 F.3d at 379, and the corresponding holding of the Federal Circuit was merely that the "complaint did not identify any substantive right, founded upon either a money mandating statute or the Constitution, which might form the basis for his claim," id. at 380. But the principle that we do not exercise jurisdiction over criminal claims has been universally and thoroughly well-established by decisions of our court, never once disturbed on appeal. See, e.g., Allen v. United States, 125 Fed. Cl. 138, 141 (2016); Emerson v. United States, 123 Fed. Cl. 126, 129–30 (2015); Hover v. United States, 113 Fed. Cl. 295, 296 (2013); Cooper v. United States, 104 Fed. Cl. 306, 312 (2012); Mendes v. United States, 88 Fed. Cl. 759, 762 (2009); Dumont v. United States, 85 Fed. Cl. 425, 430 (2009), aff'd, 345 F. App'x 586, 593 (Fed. Cir.

---

[8]  Indeed, it appears that the proper response to the failure of a panel trustee or standing trustee to be properly bonded is that the United States trustee would suspend or terminate the assignment of future cases to the trustee. 28 C.F.R. § 58.6(a)(9). If that happens, the creditors may elect a person to fill that vacancy, and while that election is pending, the United States trustee may appoint an interim trustee. 11 U.S.C. § 703(a)-(b); 11 U.S.C. § 1104(d).

2009); *McCullough v. United States*, 76 Fed. Cl. 1, 4 (2006); *see also Kania v. United States*, 650 F.2d 264, 268 (Cl. Ct. 1981) ("[T]he role of the judiciary in the high function of enforcing and policing the criminal law is assigned to the courts of general jurisdiction and not to this court."). This persuasive authority includes criminal claims arising under RICO. *See Matthews v. United States*, 72 Fed. Cl. 274, 282 (2006) ("Claims under . . . RICO are criminal claims. This court lacks jurisdiction to adjudicate criminal claims."); *Hufford v. United States*, 87 Fed. Cl. 696, 702 (2009); *Dumont*, 85 Fed. Cl. at 430.

Perhaps this point has been considered too obvious to explain. But Congress, through the Tucker Act, has not placed every violation of federal law within our jurisdiction. *See* 28 U.S.C. § 1491(a). As the Supreme Court has explained:

> Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States, see *United States v. King*, 395 U.S. 1, 2–3 (1969), and the claimant must demonstrate that the source of substantive law he relies upon "'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *United States v. Testan*, [424 U.S. 392, 400 (1976)], quoting *Eastport S.S. Corp. v. United States*, 178 Ct. Cl. 599, 607, 372 F.2d 1002, 1009 (1967).

*Mitchell*, 463 U.S. at 216–17 (footnotes omitted). A money-mandating law or regulation is one "that either entitles the plaintiff to a payment of money from the government, or places a duty upon the government, the breach of which gives the plaintiff a money damages remedy." *Contreras v. United States*, 64 Fed. Cl. 583, 588 (2005), *aff'd*, 163 F. App'x 938 (Fed. Cir. 2006). A further limitation on our jurisdiction is that the cases we have power to hear must be ones "not sounding in tort." 28 U.S.C. § 1491(a).

Thus, for a statutory violation to be the basis for a claim in our court, the statute must require that the United States government pay money to an individual for non-tortious conduct. The prosecution of a federal crime satisfies none of these conditions. Violations do not result in money being paid *by* the government, but rather in fines being paid *to* the government. *See, e.g.*, 18 U.S.C. §§ 152, 153(a), 157, 1341, 1503, 1963(a). The United States is not the defendant, but instead is the only party that may bring the action. *See Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) ("Generally, a private citizen has no authority to initiate a federal criminal prosecution."); 28 U.S.C. § 547(1) (requiring the U.S. Attorney to "prosecute for all offenses against the United States"). And criminal conduct, such as the fraud and conspiracy alleged by plaintiff, is typically tortious in nature. *See Hornback v. United States*, 56 Fed. Cl. 359, 365 (2003), *aff'd*, 91 F. App'x 679, 683 (Fed. Cir.

2004); *Cottrell v. United States*, 42 Fed. Cl. 144, 149 (1998).[9] Accordingly, criminal laws would not be the source of claims that may be brought in our court.

It is theoretically possible, one supposes, that Congress could place in Title 18 a civil law provision mandating money payments by the United States government to a party, specifying that a violation would not be considered a tort for purposes of the Tucker Act. Perhaps plaintiff suggests this is the case with his RICO claims, which he now recasts as civil claims. The problem is that, far from creating a money-mandate that is payable in our court, RICO instead provides for a civil action within the exclusive federal jurisdiction of U.S. district courts, and not this court. *See* 18 U.S.C. § 1964(c); *Tempelman v. United States*, No. 06-414T, 2007 U.S. Claims LEXIS 452, at *11–12 (Jan. 9, 2007).[10]

Our court lacks jurisdiction over violations of criminal law, and plaintiff has not identified any civil statutes mandating the payment of money by the federal government. Accordingly, plaintiff's claims based on RICO and other criminal code provisions are not within our subject-matter jurisdiction.

### 3.  *The Constitutional Claims*

In the complaint, Mr. Stanwyck alleges that our jurisdiction over his claims may be based on the Fifth and Fourteenth Amendments. Compl. at 3. After the government, in moving to dismiss the case, correctly noted that the Federal Circuit has held that our court lacks jurisdiction over due process or equal protection claims brought under these provisions, *see* Def.'s Mot. at 5 (citing *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995)), plaintiff sensibly recognized that these claims "are well objected to." Pl.'s Resp. at 6. It is clearly established that the Fifth Amendment's Due Process Clause (including any equal protection component) is not money-mandating. *See Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013).[11] And the Fourteenth Amendment is neither money-mandating nor a

---

[9] There are, of course, the additional difficulties of construing federal officials' criminal offenses *against* the United States as somehow constituting authorized action that may be imputed *to* the United States, and implying a private cause of action in the face of the specified remedies of imprisonment and fine, *see Alexander v. Sandoval*, 532 U.S. 275, 290 (2001).

[10] An additional problem is the notion that the United States government can be civilly liable for allegedly having committed a crime against itself. *See Wolf v. United States*, 127 F. App'x 499, 500–01 (Fed. Cir. 2005).

[11] Only in the limited circumstances of an alleged illegal exaction may a due process violation come within the jurisdiction of this court. *See Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1573 (Fed. Cir. 1996); *Coleman v. United States*, No. 13-431C, 2014 WL 949984, at *3 (Fed. Cl. Mar. 7, 2014).

limitation on the federal government. *See id.*; *Coleman v. United States*, No. 13-431C, 2014 WL 949984, at *3 (Fed. Cl. Mar. 7, 2014); U.S. Const. amend. XIV, § 1.

Insofar as plaintiff is attempting to state a claim under the Takings Clause of the Fifth Amendment, the government accurately identified Federal Circuit precedent that places scrutiny of the actions of bankruptcy courts beyond our jurisdiction. Def.'s Mot. at 6 (citing *Allustiarte v. United States,* 256 F.3d 1349, 1351–52 (Fed. Cir. 2001)). Because plaintiff maintains that the actions of the relevant individuals were illegal, even criminal, the jurisdictional requirement that, to be the basis of a takings claim, these actions must be authorized and not *ultra vires,* would also require their dismissal. *See id.* at 7 (citing *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802 (Fed. Cir. 1993)); *see also Bailey v. United States*, 78 Fed. Cl. 239, 253–56 (2007) (explaining the doctrine). On this point, Mr. Stanwyck concedes that he "has not ple[d] that the taking was valid," but adds that "after discovery, he may be able to properly plead this claim." Pl.'s Resp. at 6. But there will be no discovery, as plaintiff has not alleged a claim that comes within our court's subject-matter jurisdiction.

### 4. *Other Motions*

Plaintiff also requests leave to amend his complaint based on his health problems that had already resulted in several extensions of the time in which to file his response. Pl.'s Resp. at 8. Mister Stanwyck, however, does not identify any additional factual allegations or legal authority that would place his matter within our court's jurisdiction. Even though amendments of complaints are "freely" permitted "when justice so requires," RCFC 15(a)(2), plaintiff has given the Court no reason to believe that his contemplated amendments would not be futile. Thus, plaintiff's motion to amend his complaint is **DENIED**. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

Mister Stanwyck also requests a 28 U.S.C. § 1631 transfer of his case to the United States District Court for the Central District of California. Pl.'s Resp. at 8. Under this provision, should the "court find[] that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought." 28 U.S.C. § 1631. The Court does not find that plaintiff could have brought his claims in the Central District of California. Plaintiff has failed to allege a contract claim. Plaintiff cannot prosecute his claims of criminal law violations. *See* 28 U.S.C. § 547. And both the district court and the Ninth Circuit have ruled that civil RICO claims cannot be brought against the government. *See Pedrina v. Chun*, 97 F.3d 1296, 1300 (9th Cir. 1996); *Graf v. Peoples,* No. CV 07-4731-VAP (E), 2008 WL 4189657, at *4 (C.D. Cal., Sept. 4, 2008). Thus, plaintiff's motion to transfer the case is **DENIED**. *See Spencer v. United States,* 98 Fed. Cl. 349, 359 (2011).

## III.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendant's motion to dismiss this case for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1).  The Clerk shall close the case.

**IT IS SO ORDERED.**

VICTOR J. WOLSKI
Judge